AO 91 (Rev. 11/11)   Criminal Complaint   SEALED BY ORDER OF THE COURT

# UNITED STATES DISTRICT COURT
for the
Northern District of California

FILED
Sep 14 2021
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. **CR 21-71467-NC** |
| GLENDELIA FAZ and | ) | |
| JORGE LUIS SOLORIO-MENDOZA | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  July 10, 2020 to October 15, 2020  in the county of  Santa Clara  in the
Northern  District of  California , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 ~~18~~ U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B)(viii) | Conspiracy to distribute and possess with intent to distribute 50 grams and more of a mixture and substance containing methamphetamine |
| | Penalties: Max. term of imprisonment: 40 years, Min.term of imprisonment: 5 years; Max. fine: $5 million; Max. supervised release term: life; Min. supervised release term: 4 years; Mandatory special assessment: $100; Forfeiture; Potential Deportation. |

This criminal complaint is based on these facts:
Please see attached affidavit of DEA Special Agent Erik Wolf, attached hereto and incoroporated by reference.

☑ Continued on the attached sheet.

Approved as to form /D. Kassabian/
SAUSA Daniel N. Kassabian

/S/ phone
*Complainant's signature*

DEA Special Agent Erik Wolf
*Printed name and title*

Sworn to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: 9/13/21

City and state: San Jose CA

*Judge's signature*

Hon. Nathanael Cousins, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Erik A. Wolf, hereby duly sworn, declare and state:

### INTRODUCTION

1. I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516.

2. I make this affidavit in support of a Criminal Complaint charging Glendelia FAZ, and Jorge Luis SOLORIO Mendoza each with conspiracy to distribute and possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B)(viii).

3. The facts in this affidavit come from my personal observations, my training and experience, information from records and databases, and information obtained from other agents and witnesses. In addition, where statements made by other individuals (including other Special Agents and law enforcement officers) are referenced in this Affidavit, such statements are described in sum and substance and in relevant part. Similarly, where information contained in reports and other documents or records are referenced in this Affidavit, such information is also described in sum and substance and in relevant part.

4. Because this Affidavit is submitted for the limited purpose of establishing probable cause for a criminal complaint, I have not included each and every fact known to me about this case. Rather, I have set forth only the facts that I believe are necessary to support probable cause for a criminal complaint.

### AGENT BACKGROUND

5. I am a Drug Enforcement Administration (DEA) Special Agent currently assigned to the San Jose Resident Office (SJRO). As a Special Agent with the DEA, my investigations focus on large-scale narcotic offenders. I have been employed by the DEA since March 2012. Prior to being assigned to the SJRO, I received seventeen weeks of specialized training at the

1

DEA Academy in Quantico, Virginia. This training included several hundred hours of comprehensive, formalized instruction in, among other things, basic narcotics investigations, drug identification, detection, interdiction, United States narcotics laws, financial investigations and money laundering, identification and seizure of drug related assets, undercover operations, and electronic and physical surveillance procedures. I also attended DEA's Clandestine Laboratory enforcement school, focusing on investigations involving clandestine labs.

6. I have participated in numerous narcotics and financial investigations either as the case agent or in a supporting role. I have executed and assisted in the execution of numerous federal and state search warrants that resulted in the arrest of suspects and the seizure of money and narcotics. I have also interviewed drug dealers, users, and confidential sources, and have discussed with them the lifestyle, appearances, and habits of drug dealers and users, the use and meaning of coded language, and the concealment of assets. I have also participated in other aspects of narcotics investigations including, but not limited to, undercover operations, conducting physical and electronic surveillance, controlled deliveries, execution of warrants, and arrests. I have monitored meetings and consensual telephone conversations between drug dealers, confidential sources and undercover agents and have participated in physical surveillance of narcotics traffickers. During these surveillances, I have personally observed narcotics transactions, counter-surveillance techniques and the methods that narcotics traffickers use to conduct clandestine meetings.

7. As a result of my training and experience, I am familiar with how various drugs, including crystal methamphetamine, are used and the typical distribution and trafficking methods used by drug dealers and traffickers. I am also familiar with the various methods generally used by traffickers to transport drugs in and through the state of California.

8. I have also had discussions with other law enforcement officers and cooperating individuals about the packaging and preparation of narcotics, methods of operation, and security measures which are often employed by narcotics traffickers.

9. I am familiar with the manner in which narcotics traffickers use telephones,

2

cellular telephone technology, coded or slang-filled telephone conversations, false or fictitious identities, and other means to facilitate their illegal activities and thwart law enforcement investigations, in part due to other agents' experience and my involvement in past wiretap investigations.

## APPLICABLE LAW

10. Pursuant to 21 U.S.C. § 846, it is unlawful to knowingly conspire to distribute and possess with intent to distribute a controlled substance, including methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B)(viii). Methamphetamine is a Schedule II controlled substance.

## STATEMENT OF PROBABLE CAUSE

11. As discussed below, the DEA has been conducting an investigation into the drug trafficking activities of **FAZ**, **SOLORIO**, and others in the Northern District of California. The DEA used a Confidential Source ("CS")[1] to conduct controlled purchases of methamphetamine from **FAZ** and **SOLORIO**.

### July 10, 2020 Methamphetamine Purchase From FAZ

12. On July 10, 2020, CS travelled to La Estrella Market at 1306 East Julian Street, San Jose, California, in the Northern District of California, and purchased approximately a half-pound of methamphetamine[2] from **Glendelia FAZ** (known to CS as "Tia") for $3,000.00 in

---

[1] CS has participated in several federal investigations. Agents have deemed CS to be reliable and have been able to independently corroborate CS's information. CS commenced assisting agents with this investigation in July 2020. In prior investigations, CS has conducted controlled purchases of narcotics, which have subsequently led to arrests and narcotics seizures. During this investigation, CS's calls and meetings were monitored and recorded. CS has conducted multiple narcotics purchases in furtherance of this instant investigation. CS has two felony narcotics trafficking convictions, a misdemeanor possession of narcotics conviction, and two misdemeanor driving under the influence convictions. CS is currently working for monetary gain and has received over $220,000 in compensation since the beginning of CS's tenure with the DEA in 1999.

[2] Based on an analysis conducted by the DEA Western Regional Lab, the drugs FAZ sold on July 10, 2020 were identified as 223.8 +/- .2 grams of methamphetamine hydrochloride, with a purity of 96% +/- 6%.

Official Advanced Funds ("OAF"). That transaction was audio and video recorded,[3] and agents searched CS for contraband before and after the transaction with negative results. **FAZ** provided the methamphetamine to CS in a white paper bag further containing two plastic zip-top bags. Prior to the deal, CS identified **FAZ** as "Tia" based on her California driver's license photo.

### July 21, 2020 Methamphetamine Purchase From FAZ And SOLORIO

13. On July 21, 2020, at approximately 12:12 p.m. and 12:17 p.m., CS attempted to call **Glendelia FAZ**. CS then received an inbound monitored and recorded call from **FAZ**. During that call, CS asked if CS could come by. **FAZ** said she was not available until 3:30 p.m., when her nephew would come by. **FAZ** stated that the "alcohol" that was previously there was taken by her nephew. **FAZ** then said she could drop the price by $100. Based on my training, experience, and conversations with CS, I believe that **FAZ** was telling CS that she had no drugs ("alcohol") on hand at La Estrella Market because the drugs had been picked up by her nephew. I believe that **FAZ** was telling CS that she would have more drugs around 3:30 p.m.

14. At approximately 12:44 p.m., I observed a black Mercedes sedan bearing California registration 8JCR256 park in front of La Estrella Market. I observed a male, subsequently identified as **Jorge Luis SOLORIO Mendoza**, exit the driver's seat and walk towards the market. I observed an unidentified female with pink hair (hereinafter, UF-1) walk towards the market, and enter the market behind **SOLORIO**. During the next several hours, agents observed **FAZ**, **SOLORIO**, and UF-1 entering and exiting the market, and standing in front of it.

15. At approximately 1:51 p.m., CS placed a monitored and recorded call to **FAZ**. During that call, **FAZ** said that CS should come over at 4:00 p.m.

16. At approximately 3:48 p.m., CS arrived at La Estrella Market and went inside.

17. At approximately 3:55 p.m., via a pole camera, I observed a white Honda CRV pull into the market's parking lot. I then observed a male (hereinafter, UM-1) in a black shirt

---

[3] All calls and text messages described herein between CS and FAZ, and CS and SOLORIO, were consensually recorded and monitored using an investigative technology.

4

and shorts carry a white bag into La Estrella Market.  At approximately 3:57 p.m., SA Dan Tush observed UM-1 exit La Estrella Market empty-handed and depart in the Honda CRV.

18. At approximately 4:06 p.m., CS departed La Estrella Market, and subsequently met with agents where CS provided the half-pound of methamphetamine[4] that CS purchased from **FAZ** and **SOLORIO** for $2,800.00 in OAF.

19. When agents met with CS, CS stated that CS went inside La Estrella Market and saw "Tia" (**FAZ**) and "Sobrino" (**SOLORIO**) by the entry.  Per CS, **FAZ** said the source is on the way.  While CS was inside, a skinny male with a plastic bag (UM-1) came in and met **FAZ** in a back room.  CS stated that CS gave the money ($2,800.00 in OAF) to **SOLORIO** as instructed by **FAZ**, and **FAZ** gave CS approximately a half-pound of methamphetamine.  **FAZ** told CS that **FAZ** had lowered the price by $200.00 for CS.  Per CS, **SOLORIO** provided his phone number to CS to conduct future deals, as **FAZ** might be spending time taking care of her husband.

20. Based on my subsequent review of the video associated with the above transaction, as CS walked into the market, **FAZ** and **SOLORIO** were both sitting near the window.  **FAZ** was wearing a pink top, and **SOLORIO** was wearing a short sleeved shirt and pink shorts.  **FAZ** introduced **SOLORIO** as "Sobrino" (Spanish for "nephew") and said they were still "waiting on the guy."  Based on my training and experience, I believe that **FAZ** was saying that she was still waiting on the delivery of drugs.  **FAZ** discussed taking $200.00 off the price for the CS.  **FAZ** told CS that she had told **SOLORIO** about CS, and told CS that **SOLORIO** and **FAZ** work together.  **SOLORIO** told CS to make sure CS calls before coming to the market.  **FAZ** told CS that they used to have a lot of narcotics, and that their suppliers used to beg them to take it to sell.  **FAZ** said that now **FAZ** has to beg her suppliers.  **FAZ** also said that they want money up front.  **SOLORIO** and CS discussed how **SOLORIO** sold black tar

---

[4] Based on an analysis conducted by the DEA Western Regional Lab, the drugs FAZ and SOLORIO sold on July 21, 2020 were identified as 224.1 +/- .5 grams of methamphetamine hydrochloride, with a purity of 99% +/- 6%.

heroin, and had a cousin in Corning, California, who could supply CS in that area. At approximately the 17:35 minute mark, **SOLORIO** said that "he" had arrived. At that time, via the video, I observed that UM-1 walked across the front of the store carrying a white plastic bag. I believe that UM-1, the driver of the Honda CRV, is the individual that **SOLORIO** and **FAZ** were waiting on to deliver the narcotics. **SOLORIO** and CS continued to discuss selling heroin and prices. At approximately the 19:00 minute mark, I observed UM-1 depart. **FAZ** told **SOLORIO** to count the money. CS handed the OAF to **SOLORIO** to count, and then met with **FAZ**. **FAZ** was wearing gloves and provided CS with a white paper bag, and CS pulled out a Ziploc bag to examine the contents. **FAZ** told CS that this was a different kind than last time, but it was good with no "cut." **SOLORIO** then provided his number to CS, and **FAZ** told CS that CS could call either **SOLORIO** or **FAZ** to place an order. **FAZ** told CS that she lived in Gilroy, California, and may be unavailable while taking care of her husband. CS departed shortly after.

### August 31, 2020 Methamphetamine Purchase From FAZ

21.     On August 31, 2020, CS purchased a half-pound of suspected methamphetamine[5] from **Glendelia FAZ** at La Estrella Market at the direction of agents. **FAZ** charged CS $2,400 for the half-pound. The transaction was recorded and monitored, and CS was searched before and after the transaction.

### October 15, 2020 Methamphetamine Purchase From FAZ
### And Continuing Conspiracy With FAZ And SOLORIO

22.     On October 7, 2020, at approximately 12:14 p.m., CS placed a monitored and recorded call to **SOLORIO**. During that call, CS and **SOLORIO** discussed CS's customer who wanted drugs brought to Oregon. **SOLORIO** told CS that the customer would have to come down because "she" (**FAZ**) did not like to move the drugs from their location. **SOLORIO** told CS that since the drugs came from "down there," which I believe is a reference to Mexico, there

---

[5] Based on an analysis conducted by the DEA Western Regional Lab, the drugs FAZ sold on August 31, 2020 were identified as 224.1 +/- .2 grams of methamphetamine hydrochloride, with a purity of 98% +/- 6%.

6

was no reason to risk driving the drugs further north. CS and **SOLORIO** then discussed CS's customer coming down from Oregon to pick up methamphetamine, approximately five to ten pounds at a time. **SOLORIO** described a third party who got his drugs from the area to sell in another area where they were going for "4" or "5" (thousand dollars) per pound. **SOLORIO** asked how often CS's customer would come down to buy drugs, and told CS it would be better if the customer came and met with them. **SOLORIO** said that he could get "5" (pounds) right now.

23.     On October 13, 2020, at approximately 3:29 p.m., CS placed a monitored and recorded call to **FAZ**. During that call, **FAZ** told CS that the price for methamphetamine was $250 per ounce, or $2,000.00 per half-pound. **FAZ** then called back and told CS that if CS purchased a full pound of methamphetamine, the price would be $3,800.00.

24.     On October 15, 2020, CS placed a monitored and recorded call to **FAZ**. During that call, CS requested a half-pound of methamphetamine in approximately an hour and a half. CS asked if **SOLORIO** was going to be present to discuss the prices for the "work" from "down there," which I understood to be referencing getting drugs from Mexico. **FAZ** said she would make sure that **SOLORIO** was there.

25.     At approximately 12:28 p.m., CS received an incoming monitored and recorded call from **SOLORIO**. During that call, **SOLORIO** told CS that **SOLORIO** would be at the market in approximately ten minutes.

26.     At approximately 12:39 p.m., SA Kim observed a green Honda Civic bearing California registration 8NBZ768 park in the lot of La Estrella Market. SA Esposito, via the camera that views the exterior of La Estrella Market, observed **SOLORIO** get out of the driver's seat of the Honda Civic. SA Kim then observed **SOLORIO**, wearing a red shirt and black baseball cap, walk into La Estrella Market.

27.     At approximately 12:49 p.m., CS parked in front of La Estrella Market and walked inside.

28.     At approximately 12:55 p.m., CS exited La Estrella Market and departed in CS's vehicle.

29.     Agents subsequently met with CS, who provided me with a white paper bag containing two plastic bags with suspected methamphetamine[6] that CS purchased for $2,000.00 in OAF. The meeting was audio and video recorded.

30.     CS stated that CS went inside the La Estrella Market and saw "Sobrino" (a reference to **SOLORIO**) first, then went into a back room and met with "Tia" (**FAZ**). CS stated that **FAZ** had the drugs ready in a white paper bag. CS stated that CS asked about lower prices and **FAZ** said they were already getting their drugs directly from Mexico. Per CS, CS gave the money directly to **FAZ** and got the bag of suspected methamphetamine from **FAZ**. Per CS, Faz and Solorio did not want to meet CS1's customer.

31.     Based on my review of the associated video, with the assistance of a Spanish language linguist, as **FAZ** finished counting the money and CS was collecting the bag with the drugs, CS was discussing the CS's "customer" not being satisfied with the other drugs the customer had received. **SOLORIO** chimed in about checking the drugs first. At the time, the OAF was sitting on **FAZ's** table and **SOLORIO** was standing just outside the door to the small room where **FAZ** and CS were standing. The conversation continued, and CS said that CS wanted to make sure that CS could get enough for the customer. **FAZ** told CS that "he," which I understood to be a reference to **FAZ** and **SOLORIO**'s supplier, always has a lot (of drugs), and **SOLORIO** confirmed that he (their supplier) always has "several." CS said it would be better for CS customer to bring the money "down here," and **SOLORIO** confirmed it is tough to go "up there" and that it was far.

## CONCLUSION

32.     Based on the foregoing, I hereby assert that probable cause exists to believe that **Glendelia FAZ,** and **Jorge Luis SOLORIO Mendoza** violated 21 U.S.C. §§ 846, 841(a)(1),

---

[6] This exhibit was later determined to weigh approximately 276.0 gross grams, and tested presumptively positive for the presence of methamphetamine by me as witnessed by SA Cheng.

8

and 841(b)(1)(B)(viii).

/s/ phone
_____
ERIK A. WOLF
Special Agent
Drug Enforcement Administration

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this 13 day of September 2021.  This complaint and warrants are to be filed under seal.

_____
THE HONORABLE NATHANAEL M. COUSINS
United States Magistrate Judge

# DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

**BY:** [X] COMPLAINT  [ ] INFORMATION  [ ] INDICTMENT  [ ] SUPERSEDING

**Name of District Court, and/or Judge/Magistrate Location:** NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

## OFFENSE CHARGED

21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B)(viii) – Conspiracy to distribute and possess with intent to distribute 50 grams and more of a mixture and substance containing methamphetamine;

[ ] Petty  [ ] Minor  [ ] Misdemeanor  [X] Felony

**PENALTY:** Max. term of imprisonment: 40 years, Min. term of imprisonment: 5 years; Max. fine: $5 million; Max. supervised release term: life; Min. supervised release term: 4 years; Mandatory special assessment: $100; Forfeiture; Potential Deportation

**DEFENDANT - U.S:** GLENDELIA FAZ

**DISTRICT COURT NUMBER:**

**FILED** Sep 14 2021 — SUSAN Y. SOONG, CLERK, U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE

## PROCEEDING

**Name of Complainant Agency, or Person (& Title, if any):** DEA Special Agent Erik Wolf

[ ] person is awaiting trial in another Federal or State Court, give name of court

[ ] this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

[ ] this is a reprosecution of charges previously dismissed which were dismissed on motion of:
  [ ] U.S. ATTORNEY  [ ] DEFENSE

SHOW DOCKET NO.

[ ] this prosecution relates to a pending case involving this same defendant

[ ] prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

MAGISTRATE CASE NO.

**Name and Office of Person Furnishing Information on this form:** Stephanie M. Hinds
[X] U.S. Attorney  [ ] Other U.S. Agency

**Name of Assistant U.S. Attorney (if assigned):** Daniel N. Kassabian, SAUSA

## DEFENDANT

**IS NOT IN CUSTODY**
1) [X] Has not been arrested, pending outcome this proceeding. If not detained give date any prior summons was served on above charges ▶
2) [ ] Is a Fugitive
3) [ ] Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) [ ] On this charge
5) [ ] On another conviction  [ ] Federal  [ ] State
6) [ ] Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer been filed?  [ ] Yes  [ ] No
If "Yes" give date filed

**DATE OF ARREST** ▶ Month/Day/Year

Or... if Arresting Agency & Warrant were not
**DATE TRANSFERRED TO U.S. CUSTODY** ▶ Month/Day/Year

[ ] This report amends AO 257 previously submitted

## ADDITIONAL INFORMATION OR COMMENTS

**PROCESS:**
[ ] SUMMONS  [ ] NO PROCESS*  [X] WARRANT   **Bail Amount:** No Bail

If Summons, complete following:
[ ] Arraignment  [ ] Initial Appearance

**Defendant Address:**

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

**Date/Time:**   **Before Judge:**

**Comments:**

**SEALED BY ORDER OF THE COURT**

# DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

**BY:** [X] COMPLAINT   [ ] INFORMATION   [ ] INDICTMENT   [ ] SUPERSEDING

**Name of District Court, and/or Judge/Magistrate Location:** NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

## OFFENSE CHARGED

21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B)(viii) – Conspiracy to distribute and possess with intent to distribute 50 grams and more of a mixture and substance containing methamphetamine

[ ] Petty
[ ] Minor
[ ] Misdemeanor
[X] Felony

**PENALTY:** Max. term of imprisonment: 40 years, Min. term of imprisonment: 5 years; Max. fine: $5 million; Max. supervised release term: life; Min. supervised release term: 4 years; Mandatory special assessment: $100; Forfeiture; Potential Deportation;

## DEFENDANT - U.S

▶ JORGE LUIS SOLORIO-MENDOZA

DISTRICT COURT NUMBER

## PROCEEDING

**Name of Complaintant Agency, or Person (& Title, if any):** DEA Special Agent Erik Wolf

[ ] person is awaiting trial in another Federal or State Court, give name of court

[ ] this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

[ ] this is a reprosecution of charges previously dismissed which were dismissed on motion of:
[ ] U.S. ATTORNEY   [ ] DEFENSE

SHOW DOCKET NO.

[ ] this prosecution relates to a pending case involving this same defendant

[ ] prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

MAGISTRATE CASE NO.

**Name and Office of Person Furnishing Information on this form:** Stephanie M. Hinds
[X] U.S. Attorney   [ ] Other U.S. Agency

**Name of Assistant U.S. Attorney (if assigned):** Daniel N. Kassabian, SAUSA

## DEFENDANT

**IS NOT IN CUSTODY**
1) [X] Has not been arrested, pending outcome this proceeding. If not detained give date any prior summons was served on above charges ▶ _____
2) [ ] Is a Fugitive
3) [ ] Is on Bail or Release from (show District) _____

**IS IN CUSTODY**
4) [ ] On this charge
5) [ ] On another conviction } [ ] Federal [ ] State
6) [ ] Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution _____

Has detainer been filed? [ ] Yes [ ] No — If "Yes" give date filed _____

**DATE OF ARREST** ▶ Month/Day/Year _____
Or... if Arresting Agency & Warrant were not
**DATE TRANSFERRED TO U.S. CUSTODY** ▶ Month/Day/Year _____

[ ] This report amends AO 257 previously submitted

## ADDITIONAL INFORMATION OR COMMENTS

**PROCESS:**
[ ] SUMMONS   [ ] NO PROCESS*   [X] WARRANT   **Bail Amount:** No Bail

If Summons, complete following:
[ ] Arraignment   [ ] Initial Appearance
**Defendant Address:**

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

**Date/Time:** _____   **Before Judge:** _____

**Comments:**